IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KEVIN FENNICK,

                 Plaintiff,

      v.

NYCM: New York Central Mutual Fire
Insurance Company, *et al.,*

                 Defendants.

_____

Civil Action No.
3:13-CV-0085 (GTS/DEP)

APPEARANCES:

FOR PLAINTIFF:

KEVIN FENNICK, *Pro Se*
P.O. Box 170753
Boston, MA 02116

FOR DEFENDANT:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

OF COUNSEL:

REPORT, RECOMMENDATION, AND ORDER

    *Pro se* plaintiff Kevin Fennick brings this action against defendants

NYCM: New York Central Mutual Fire Insurance Company, NYCM

Insurance Company, and NYCM Insurance Co. (collectively "NYCM"), and

seeks leave to proceed *in forma pauperis* ("IFP"). Plaintiff's complaint and accompanying IFP application have been referred to me for review. For the reasons set forth below, plaintiff's motion to proceed IFP is granted, his motions for leave to amend his complaint are denied, and I recommend that his complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

I.      BACKGROUND

Plaintiff, a citizen of Massachusetts, commenced this action in December 2012, in the Southern District of New York against defendant NYCM, a New York citizen, asserting diversity of citizenship as a basis for that court's jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. No. 2. Plaintiff's complaint was accompanied by an application for leave to proceed IFP. Dkt. No. 1.

Plaintiff's complaint alleges that in or about October 2012, he was in a motor vehicle accident involving another vehicle. Dkt. No. 2 at 3, 5. The accident was allegedly caused by the driver of the other vehicle improperly accelerating into plaintiff's lane and crashing into the vehicle plaintiff was driving. *Id.* at 5. The vehicle driven by plaintiff at the time of the accident, a Buick Century, was owned by plaintiff's grandmother. *Id.* Although it is

not clear in the complaint, it appears that defendant NYCM insured the other vehicle, and not the Buick Century plaintiff was driving at the time of the accident. *Id.* at 3.

Following the accident, plaintiff filed a report with "Commerce Insurance" and the Massachusetts Registry of Motor Vehicles. Dkt. No. 2 at 6. In response, the State of Massachusetts stated that the accident occurred at an intersection, a fact that plaintiff alleges is false. *Id.* Subsequent to receiving the State of Massachusetts' response, plaintiff received notice that defendant NYCM agreed with the State and found him at fault for the accident. *Id.* Plaintiff's complaint alleges that defendant NYCM's decisions were discriminatory because "the [driver of the other] vehicle . . . is Latino." *Id.*

Based upon these allegations, plaintiff asserts claims of discrimination and insurance fraud. Dkt. No. 2 at 4. As relief, he requests fifty-three million dollars in damages, plus payment for the damage to the Buick Century. *Id.*

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action in the Southern District of New York in December 2012.  Dkt. Nos. 1, 2.  Pursuant to 28 U.S.C. § 1391(c), Chief District Judge Loretta Preska of the Southern District transferred the case to the Northern District of New York on January 18, 2013.  Dkt. No. 4.  Upon transfer of the matter to this district, plaintiff's complaint and IFP application were forwarded to me for review.

Also pending before the court are plaintiff's two motions for leave to amend his complaint.  Dkt. Nos. 7, 12.

III.   <u>DISCUSSION</u>

A.   <u>Application to proceed <i>In Forma Pauperis</i></u>

When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[1]  28 U.S.C. §§ 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee.  28 U.S.C. § 1915(a)(1).[2]  In this instance, because

---

[1]   Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee.  Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

[2]   The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates.  <i>See</i> 28 U.S.C. § 1915(a)(1)

4

I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed IFP is granted.[3]

B.    Sufficiency of Plaintiff's Claims

Because I have found that plaintiff Fennick meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e).

1.    Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  In deciding whether a complaint meets this standard and states a colorable claim, a court must extend a certain measure of deference in favor of *pro*

_____

(authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

    [3]    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

5

*se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Nonetheless, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See*, *e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d

Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[4]

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (internal quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

---

[4] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2.   Plaintiff's Discrimination Claim

Plaintiff's complaint does not state the grounds upon which he relies in asserting a discrimination claim against defendant. To the extent that plaintiff asserts this claim pursuant to 42 U.S.C. § 1983, plaintiff has failed to state a claim upon which relief may be granted because he has failed to allege that defendant NYCM was acting under the color of state law when

it engaged in the conduct forming the basis of plaintiff's claims. *See Gentile v. Republic Tobacco Co*., No. 95-CV-1500, 1995 WL 743719, *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, D.J.) ("[P]arties may not be held liable under [section 1983] unless it can be established that they have acted under the color of state law."). Defendant NYCM is not a state actor, nor are there any facts in plaintiff's complaint that allege defendant acted as an agent of the state at any time relevant to this action. For this reason alone, any claim asserted against defendant NYCM fails.

In addition, although plaintiff's complaint alleges that "[t]he state may have aided the defendant," that allegation does not specify (1) the state to which it refers, New York or Massachusetts, (2) what the state helped defendant accomplish, or (3) the conduct the state took to allegedly aid defendant. Even liberally construed, plaintiff's complaint fails to allege facts plausibly suggesting that the state, either New York or Massachusetts, discriminated against him in violation of section 1983.

To the extent that plaintiff asserts his discrimination cause of action through some other statutory vehicle, he has failed to identify that statute, or any other provision supporting his claim, and the court is not aware of any that may apply. For that reason, I recommend that plaintiff's

discrimination claim be dismissed.  *See Duffy v. Evans*, No. 11-CV-7605, 2012 WL 4327605, at *4 (S.D.N.Y. Sept. 19, 2012) ("[T]he duty to liberally construe a [*pro se*] plaintiff's complaint is not the equivalent of a duty to re-write it." (internal quotation marks and alterations omitted) (citing 2 Moore's Fed. Practice § 12.34(1)(b))); *Burkey v. Deeds*, 824 F. Supp. 190, 193 (D. Nev. 1993) ("While courts should liberally interpret pro se pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of creating a federal claim for the petitioner.").

### 3.    Plaintiff's Fraud Claim

Plaintiff has asserted an insurance fraud claim against defendant NYCM.  Because this is a diversity action, and because there are insufficient facts alleged in plaintiff's complaint to permit the court to determine which state law, New York or Massachusetts, applies, I have analyzed plaintiff's fraud claim under the applicable laws in both states.

Regardless of which state's law applies, however, plaintiff's complaint must comply with Rule 9 of the Federal Rules of Civil Procedure when asserting a fraud claim.  Rule 9 requires that "the circumstances constituting fraud . . . be stated with particularity."  Fed. R. Civ. P. 9(b).

"To meet its burden of pleading a claim of fraud, the complaint must adequately specify the misleading or fraudulent statements the claimant alleges it relied upon as well as the location, time frame, and identity of those responsible for making the statements."  *Stanley v. Bray Terminals, Inc.*, 197 F.R.D. 224, 228 (N.D.N.Y. 2000) (Kahn, J.) (citing *Goldman v. Belden*, 754 F.2d 1059, 1069-70 (2d Cir. 1985)).

a.     <u>New York Law</u>[5]

In New York, to state a claim of actual fraud, the complaint must allege that "the defendant knowingly misrepresented or concealed a material fact for the purpose of inducing another party to rely upon it, and that the other party justifiably relied upon such misrepresentation or concealment to his or her own detriment."  *Levin v. Kitsis*, 82 A.D.3d 1051, 1054 (N.Y. App. Div. 2d Dep't 2011).

---

[5]     To the extent that plaintiff asserts a claim for "insurance fraud," the relevant provision, N.Y. Insurance Law § 403, gives rise to a cause of action against the insured for presenting materially false information to the insurer.  *See Martin H. Handler, M.D., P.C. v. Dinapoli*, 88 A.D.3d 1187, 1188 (N.Y. Sup. Ct. App. Div. 3d Dep't 2011).  Section 403 prohibits "a fraudulent insurance act," which is defined by cross-reference to New York Penal Law § 176.05.  Section 176.05 defines "a fraudulent insurance act" as follows:

> A fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents . . . to or by an insurer . . .:
>
> 1.     any written statement as part of, or in support of. . . a claim for payment or other benefit pursuant to an insurance policy . . . that he or she knows to:
>
>    (a)     contain materially false information concerning any fact material thereto; or
>
>    (b)     conceal, for the purpose of misleading, information concerning any fact material thereto[.]

N.Y. Penal Law § 176.05.  Because section 403 does not create a cause of action by an insured against his insurer (or a victim of a motor vehicle accident against the insurer of an alleged tortfeasor, as in this case) for presenting allegedly false information, I have analyzed plaintiff's claim under the legal standards governing an actual fraud claim in New York.

Here, plaintiff's complaint fails to allege any facts that give rise to a claim of fraud. More specifically, although the complaint alleges that NYCM agreed with the State of Massachusetts that the motor vehicle accident occurred at an intersection, a fact that plaintiff alleges is false, it is entirely unclear if, or how, plaintiff relied upon that fact. Indeed, plaintiff disputes the accuracy of that fact and has appealed the State of Massachusetts' decision. In addition, although plaintiff seeks fifty-three million dollars in damages, he has failed to allege any injury, except to his grandmother's vehicle.[6] For example, plaintiff's complaint fails to allege that plaintiff was physically injured in the motor vehicle accident, or that any of his own property was damaged in the accident. For all of these reasons, I find that plaintiff's complaint fails to state a claim for fraud under New York law, and I recommend that it be dismissed.

b.     Massachusetts Law

The law governing fraud in Massachusetts is nearly identical to that of New York. In 2003, the Appeals Court of Massachusetts reiterated that, to establish fraud, a plaintiff must prove that

---

[6]     As discussed more completely below, plaintiff does not have standing to assert a damage claim where the only alleged injury occurred to a third party's property.

> the defendant[,] or its agent, made a false
> representation of a material fact with knowledge of its
> falsity for the purpose of inducing the plaintiff to act
> thereon, and that the plaintiff relied upon the
> representation as true and acted upon it to its
> damage.

*Reisman v. KPMG Peat Marwick LLP*, 57 Mass. App. Ct. 100, 108-09

(Mass. App. Ct. 2003) (internal quotation marks and alterations omitted).

For the same reasons that plaintiff's complaint fails as it relates to a

fraud claim pursuant to New York law, it fails pursuant to Massachusetts

law.  Plaintiff has failed to allege facts plausibly suggesting that plaintiff

relied on any alleged materially false statement by defendant NYCM, and

he has failed to allege any injury as a result.  For these reasons, I find that

plaintiff's complaint fails to state a claim for fraud under Massachusetts

law, and I recommend that it be dismissed.

### 3.    Other Considerations

Plaintiff's complaint seeks relief for the costs related to repairing the

damage to the Buick Century belonging to plaintiff's grandmother.

Plaintiff's complaint, however, fails to allege facts that plausibly suggest

plaintiff has standing to assert a damage claim to recover costs to this, a

third party's, vehicle.  To establish that a party has standing that satisfies

Article III of the United States Constitution, he "must show that he

14

personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979), and that the injury "is likely to be redressed by a favorable decision," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).  Because there are no facts alleged in plaintiff's complaint that suggest plaintiff had any legal interest in the Buick Century at the time of the accident, he has no standing to assert any claim arising from its damage, which is the only injury alleged in the complaint. Accordingly, plaintiff's complaint is subject to dismissal on this ground.

In addition, because jurisdiction is predicated on diversity, it must be clear on the face of plaintiff's complaint that the amount in controversy in the action exceeds seventy-five thousand dollars exclusive of interests and costs.  28 U.S.C. § 1332.  The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Wolde-Meskel v. Vocational Instruction Project Cmty. Svcs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).  "[T]o demonstrate a filing in bad faith, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Wolde-Meskel*, 166 F.3d at 63 (quoting *St. Paul*

15

*Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

In this case, it is true that plaintiff's complaint seeks damages in the amount of fifty-three million dollars, plus the cost of repairing his grandmother's Buick Century. However, it alleges no facts plausibly suggesting that plaintiff suffered a legally compensable injury of that magnitude as a result of defendant NYCM's conduct. The complaint does not allege facts that suggest plaintiff was physically injured, nor does it include facts that explain the extent of the damage done to his grandmother's vehicle. Even assuming that the vehicle was totaled in the accident, and that plaintiff has standing to assert a claim seeking damages for the cost of repairing the vehicle, it is "a legal certainty" that a Buick Century is not worth fifty-three million dollars. *Wolde-Meskel*, 166 F.3d at 66. Accordingly, I find that plaintiff's complaint has failed to allege facts plausibly suggesting that the amount of damages plaintiff seeks supports diversity jurisdiction in this case. For this additional reason, I recommend dismissal of plaintiff's complaint.

Finally, under either New York or Massachusetts law, it appears that plaintiff may not assert a claim for damages against defendant NYCM as the insurer of the other vehicle and its driver, who plaintiff alleges is

responsible for the motor vehicle accident. Under common law in New York, a person injured through conduct of another had no cause of action directly against the insurer of the tortfeasor. *Lang v. Hanover Ins. Co.,* 3 N.Y.3d 350, 353 (N.Y. Ct. of App. 2004) (citing *Jackson v. Citizens Cas. Co.,* 277 N.Y. 385 (N.Y. Ct. of App. 1938)). The harshness of this rule was ameliorated, however, through enactment of N.Y. Insurance Law § 3420. *Lang*, 3 N.Y.3d at 354. Under section 3420, an injured party may pursue a claim against the tortfeasor's insurer, but only after first obtaining a money judgment against the insured for damages for the injuries suffered. *Id.* at 354-55. Similarly, the Supreme Judicial Court of Massachusetts has held that Massachusetts law "gives an injured highway traveler *who has recovered a judgment against the party responsible* for his injuries the right to collect directly from the tortfeasor's insurer[.]" *Flattery v. Gregory*, 397 Mass. 143, 150 (Sup. Jud. Ct. of Mass. 1986) (emphasis added).

Accordingly, in this case, any of plaintiff's claims against defendant NYCM that seek damages as a result of the other driver's tortious conduct are premature. Plaintiff must first prevail in a lawsuit awarding money damages against the other driver. N.Y. Insurance Law § 3420; *Lang*, 3

17

N.Y.3d at 353; *Flattery*, 397 Mass. at 150. For this reason, I find that dismissal of plaintiff's complaint is justified on this grounds, as well.

C.    <u>Plaintiff's Motion for Leave to Amend</u>

On February 4, 2013, and again on March 6, 2013, plaintiff filed motions for leave to amend his complaint. Dkt. Nos. 7, 12. Neither motion is accompanied by a proposed amended complaint, as required by this court's local rules. N.D.N.Y. L.R. 7.1(a)(4). In this district, local rule 7.1(a)(4) requires a party seeking to amend a pleading (1) attach an unsigned copy of the proposed amended pleading, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through submission of a red-lined version of the original pleading or other equivalent means. *Id.*

When this case was transferred to this district, plaintiff was provided a copy of the court's local rules. Dkt. No. 6 at 2. Compliance with local rule 7.1(a)(4) is regularly enforced in this district. *See*, *e.g.*, *Fahs Const. Group, Inc. v. Gray*, No. 10-CV-0129, 2012 WL 2873532, at *6 (July 12, 2012) (Suddaby, J.) (denying the plaintiff's cross-motion for leave to file an amended complaint on the sole grounds that it failed to comply with local rule 7.1(a)(4)); *see also McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("While

we have insisted that the pleadings prepared by [*pro se* litigants] be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").  For that reason, plaintiff's motions to amend are denied.

### D.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where the court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").  Here, affording plaintiff the deference to which he is entitled as a *pro se* litigant, I recommend that, in the event my recommendations contained in this report are adopted, he be permitted to amend his complaint to address the deficiencies identified above.

In the event that plaintiff chooses to file an amended complaint, it must clearly set forth the facts that give rise to his claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  Plaintiff is also informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely on or incorporate by reference any pleading or document previously filed with the court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

III.    SUMMARY AND RECOMMENDATION

Based upon plaintiff's submissions, I find that he should be excused from paying the applicable filing fee, and permitted to proceed in the action IFP.  A review of plaintiff's complaint, however, reveals fatal deficiencies with his discrimination and fraud causes of action.  In addition, plaintiff lacks standing to assert any damage claim in this case because he has failed to allege any injury personally suffered by him. Plaintiff's complaint also fails because it does not allege any facts that

plausibly suggest plaintiff has suffered over seventy-five thousand dollars worth of damages, a fact necessary to support this court's subject matter jurisdiction. Finally, to the extent plaintiff intends to sue defendant NYCM to recover money damages he might be owed as a result of the other driver's tortious conduct, that claim fails under either New York or Massachusetts law because plaintiff has not yet obtained a money judgment against the other driver.

Accordingly, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 1) is granted; and it is

ORDERED that plaintiff's motions for leave to amend (Dkt. Nos. 7, 12) are denied; and it is further hereby

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without further order of the court unless, within thirty days of the date of any order approving this recommendation, plaintiff files an amended complaint that cures the deficiencies identified in this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:     May 17, 2013
           Syracuse, New York

_____

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See* United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also* United States v. One Parcel Of Property Located At 194 Quaker Farms Rd., 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf.* United States v. Esposito, 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT

Not Reported in F.Supp., 1995 WL 743719 (N.D.N.Y.)

(Cite as: 1995 WL 743719 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony GENTILE, Plaintiff,
v.
REPUBLIC TOBACCO COMPANY, Defendant.
No. 95-CV-1500 (RSP) (DNH).

Dec. 6, 1995.
Anthony Gentile, Binghamton, NY, pro se.

*DECISION and ORDER*

POOLER, District Judge.
*I. Background*
**\*1** Presently before this Court is an application to proceed in forma pauperis and a civil rights complaint. Plaintiff Anthony Gentile ("Gentile") has not paid the partial filing fee required to maintain this action.

Because Gentile's complaint is without arguable basis in law, I dismiss it pursuant to 28 U.S.C. § 1915(d) and Rule 5.4(a) of the Local Rules of Practice of this District as without arguable basis in law.

In his *pro se* complaint, Gentile claims that defendant Republic Tobacco Company ("Republic") manufactures a product called TOP tobacco, and that Republic has negligently failed to put any warning labels on such product regarding possible health hazards which may be caused by the use of such product. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y. 1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*).

I have determined that Gentile's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). I therefore turn to the second inquiry. A court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*). In addition, the court should exercise extreme caution in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983). Nonetheless, the Court has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir. 1974), and to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

Gentile brought this action under 42 U.S.C. § 1983, which permits individuals to seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* No. 91-CV-612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8-9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). However, parties may not be held liable under this section unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* No. 92-Civ-4288, 1992 WL 380914, \*1, 1992

Not Reported in F.Supp., 1995 WL 743719 (N.D.N.Y.)

(Cite as: 1995 WL 743719 (N.D.N.Y.))

U.S.Dist. LEXIS 18864, *2-3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

**\*2** In the present case, Gentile has named Republic as the sole defendant herein. However, Gentile has not alleged any nexus between the State of New York and the challenged actions of Republic. State action is an essential element of any § 1983 claim. *See Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, C.J.) (citation omitted).

Moreover, the Court notes that Gentile contends that Republic's failure to warn the public of possible health hazards was the result of negligence on the part of the defendant. Complaint at 2. However, it is well settled that mere negligence is not cognizable under § 1983. *See Stevens v. Pinkney,* No. 95-CV-1338, slip op. at 4 (N.D.N.Y. Oct. 25, 1995) (Scullin, J.) (citations omitted).

Because no arguable basis in law supports Gentile's complaint, I must dismiss it pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Rule 5.4(a) of the Local Rules of Practice of this District as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

N.D.N.Y.,1995.

Gentile v. Republic Tobacco Co.
Not Reported in F.Supp., 1995 WL 743719 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
John DUFFY, Plaintiff,
v.
Andrea EVANS, Chairperson, New York State Division
of Parole, Defendant.
No. 11 Civ. 7605(JMF).

Sept. 19, 2012.
*OPINION AND ORDER*

JESSE M. FURMAN, District Judge.

**\*1** Plaintiff John Duffy, a New York State prisoner who is proceeding *pro se,* brings this action against Andrea Evans, Chairperson of the New York State Board of Parole (the "Board"), pursuant to Title 42, United States Code, Section 1983, alleging that his constitutional rights were violated when the New York State Division of Parole repeatedly denied his application for parole release. Specifically, the complaint, filed on October 26, 2011, includes nine causes of action for alleged deprivation of Duffy's rights to procedural and substantive due process, free speech, and equal protection. Plaintiff seeks declaratory and injunctive relief, including expungement of any false information in his parole file and a *de novo* hearing before the Board. (Compl.¶ 38). Defendant Evans now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety. (Docket No. 14). For the reasons stated below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint. *See, e.g., Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Accordingly, the following facts are taken from the complaint and from documents attached to and referenced therein, and are assumed to be true for purposes of this motion. *See, e. g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir.2009).

Plaintiff Duffy is a New York State prison inmate currently incarcerated at the Hudson Correctional Facility in Hudson, New York. (Compl.¶ 1). At all times relevant to this action, Plaintiff was incarcerated at the Arthur Kill Correctional Facility in Staten Island, New York, and the Mid–Orange Correctional Center, located in Orange County, New York. (*Id.* ¶ 2). In 1981, Plaintiff Duffy was convicted of murder in the second degree for the 1979 stabbing of James Connelly and was sentenced to an indeterminate term of imprisonment of twenty years to life. (*Id.* ¶ 4). Duffy became eligible for parole after he served his minimum sentence and appeared before the Board for the first time in 2001, at which point his application for parole was denied. Since 2001, Plaintiff has appeared before the Board five additional times. Each time the Board has denied his application for parole and recommended that he apply again in two years, the maximum allowed interval under N.Y. Executive Law § 259–i(2)(a). (*Id.* ¶ 2).[FN1]

FN1. Duffy appeared before the Board in 2001, 2003, 2005, 2007, 2009, and most recently on July 20, 2011. (Compl.¶ 4).

After he was denied parole in 2005, Duffy commenced an Article 78 proceeding under the New York Civil Practice Law and Rules, N.Y. C.P.L.R. 7801, *et seq.* (McKinney 2011), challenging the Board's denial of his application. (Biesty Decl. Ex. A). In the state court proceeding, Duffy challenged the Board's decision to deny him parole on a number of grounds, including that the Board improperly considered victim impact statements that contained false information about him. (*See id.*). In an opinion dated July 12, 2006, Justice Robert A. Sackett of the Supreme Court of New York, County of Albany, dismissed the proceeding, finding no support in the record for Duffy's claims. (*Id.*).

**\*2** Duffy next went before the Board in 2007, and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

once again was denied parole. (Compl.¶ 2). Thereafter, Plaintiff filed an Article 78 proceeding in Kings County Supreme Court in which he challenged the Board's failure to consider the minutes of his sentencing proceeding, which could not be located prior to his hearing. (Compl.Ex.K). Justice Arthur M. Schack granted Plaintiff's petition in a decision and order dated May 26, 2009, and ordered the Board to hold a *de novo* parole hearing at which it was required to afford Duffy "a favorable inference as to the sentencing recommendation of his trial judge." (*Id.*). The Division of Parole appealed this order to the Appellate Division, Second Department, which reversed Justice Schack's order, holding that "[i]n the absence of any indication that the unavailable sentencing minutes contained any recommendation as to parole, the failure of the Board to obtain and consider those minutes did not prejudice Duffy." (Compl.Ex.L).

In July 2009, Duffy went before the Board again, and once more was denied parole. (Compl.¶ 2). According to the complaint, in November 2009, Duffy discovered a book written by James Connelly's sister, in which she described her efforts to have Duffy's parole applications denied. (*Id.* ¶ 4). The book contained victim impact statements that Connelly's sister allegedly submitted to the Division of Parole, dated 2001, which stated that Duffy had (1) assaulted a woman while on bail; (2) attacked a member of the victim's family during his criminal trial; and (3) threatened the victim's family. (*Id.*). By letter dated November 16, 2009, Duffy filed a complaint with Defendant Evans concerning these victim impact statements, asserting that they contained false and fabricated information and should not have been included in his file. (Compl.Ex. C). According to the complaint, the Division of Parole never responded to this letter. (Compl.¶ 9). Duffy then commenced a third Article 78 proceeding in Orange County Supreme Court, alleging that the New York Division of Parole improperly and unlawfully relied upon "false and erroneous information" contained in those statements when considering Duffy's parole application. (Compl.Ex.F). By order dated September 21, 2010, Justice Robert A. Onofry denied the application, stating that "[s]ince victim impact statements are tendered under a promise of confidentiality, and since the Board, at its discretion, can consider additional submissions which contain out of court allegations, Petitioners [sic] request to

expunge these documents from his parole filed [sic] must be denied as legally unsupportable." (*Id.* (citations and internal quotation marks omitted)).

On July 20, 2011, Duffy appeared before the Board once more—his sixth time in ten years. At the 2011 hearing, the Board noted that Duffy disputed some information provided by the victim's family contained in his parole file. (Compl.¶ 10). The Board also questioned Duffy about his past behavior and future plans. (Compl. Ex. D at 9–11, 13). At some point, the Board completed a pre-printed form titled "New York State–Board of Parole–Commissioner's Worksheet." (Compl.Ex.E). Duffy's name and identification number were handwritten at the top of the form. (*Id.*). Just below Duffy's name, in a section of the form captioned "PAROLE DECISIONS," the Board checked the box labeled "DENIED" and indicated that Duffy's next appearance would be in July 2013. (*Id.*).

**\*3** The form also includes the following typed statement:

### CONDITIONS OF RELEASE / REASONS FOR DENIAL

Parole is denied. After a careful review of your record, a personal interview, and due deliberation, it is the determination of this panel that, if released at this time, there is a reasonable probability that you would not live at liberty without violating the law, and your release at this time is incompatible with the welfare and safety of the community and would so deprecate the seriousness of the crime as to show disrespect for the law [sic]
This decision is based on the following: You stand convicted of the following serious offense

(*Id.*). Following that typed statement, the following is written by hand:

of murder 2 in which you caused the death of a 15 year old male by repeatedly stabbing him in the neck and chest. This was a heinous crime. It was completely senseless and has probably ruined the lives of many people. After it occurred, you ran and became a fugitive for about 18 months. This crime shows a complete lack

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

of regard for human life.

(*Id.*). The handwritten passage also contains two crossed-out sentences, which appear to state that Duffy "claim[s] the victim's family is making false statements about [him]." (*Id.*). Finally, just below the hand-written text appears the following typed sentence: "Consideration has been given to your program completion and satisfactory behavior, however your release at this time is denied." (*Id.*).

Consistent with the Worksheet, the Board determined that Duffy was not yet suitable for parole. The Board's written Decision Notice, dated July 21, 2011, included an explanation of the denial that was nearly identical to the text on the Worksheet. (Compl.Ex.J). Among other things, the Board explained that it based its decision on the "heinous" nature of Duffy's crime, which was "completely senseless and has probably ruined the lives of many people." (*Id.*). The Board also noted that after the 1979 crime, Duffy "ran and became a fugitive for about 18 months." (*Id.*). The Board concluded that "if released at this time, there is a reasonable probability that [Duffy] would not live at liberty without violating the law, and [Duffy's] release at this time is incompatible with the welfare and safety of the community and would so deprecate the seriousness of the crime as to show disrespect for the law." (*Id.*).

Plaintiff commenced this action on October 26, 2011. (Docket No. 2).

### DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to

show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

**\*4** Plaintiff is proceeding *pro se.* Therefore, his submission should be held "to less stringent standards than formal pleadings drafted by lawyers ..." *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (quotations and citations omitted); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (stating that a court is "obligated to construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. College,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (quoting 2 Moore's Federal Practice § 12.34[4][a], at 12–72.7 (2005)). Thus, the " 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.' " *Id.* (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12–61); *see also, e.g., Joyner v. Greiner,* 195 F.Supp.2d 500, 503 (S.D.N.Y.2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

### A. New York State's Parole System

New York's parole system is administered by the Board of Parole. *See* N.Y. EXEC. LAW §§ 259, 259–b. The Board's authority to grant parole release is governed by Executive Law § 259–i, which states, in relevant part: Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the guidelines ... shall require that the following be considered: (i) the institutional record including program goals and accomplishments,

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) [issues related to deportation]; and (v) any statement made to the board by the crime victim or the victim's representative ....

*Id.* § 259–i(2)(c)(A). "While consideration of these guidelines is mandatory, the ultimate decision to parole a prisoner is discretionary." *Graziano v. Pataki,* 689 F.3d 110, 113 (2d Cir.2012) (per curiam) (quoting *Silmon v. Travis,* 95 N.Y.2d 470, 477 (2000)). Moreover, although the Board "must provide the inmate with a proper hearing in which only the relevant guidelines are considered," it "need not expressly discuss each of these guidelines in its determination." *Id.* (quoting *King v. N.Y. State Div. of Parole,* 83 N.Y.2d 788, 791 (1994)).[FN2]

FN2. Duffy's complaint names only Evans as a defendant and seeks only declaratory and injunctive relief. In his opposition papers, however, Duffy sometimes states that Evans and the Board of Parole should be held liable to him. (*See* Pl.'s Aff. in Opp'n to Def.'s Mot. to Dismiss ¶ 10). Putting aside the fact that a complaint cannot be amended through papers opposing a motion to dismiss, any claim for damages against Evans would be subject to dismissal because Duffy has not alleged her personal involvement in the constitutional violations, *compare Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (holding that the personal involvement of a defendant in the alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983), *with Davidson v. Scully,* 148 F.Supp.2d 249, 254 (S.D.N.Y.2001) ("Personal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983") (citation omitted), and any claim against the Board would be subject to dismissal under the Eleventh Amendment, *see, e.g., Stone v. N.Y.C Dep't of Homeless Servs.,* 159 Fed. App'x 324, 325 (2d Cir.2005) (dismissing Section 1983 claim against the New York State Division of Parole because it is barred by the Eleventh Amendment); *Heba v. N.Y. State Div. of Parole,* 537 F.Supp.2d 457, 471 (E.D.N.Y.2007) (same); *Villalobos v. N.Y. Div. of Parole,* No. 09 Civ. 8431(WHP), 2010 WL 3528926, at *2 (S.D.N.Y. Aug 23, 2010) (dismissing Section 1983 claim against the New York Parole Board because it is barred by the Eleventh Amendment).

**B. The Claims Related to Denial of Parole Prior to 2009 Are Time Barred**

**\*5** As an initial matter, Duffy's claims related to his parole determinations in 2001, 2003, 2005, 2007, as well as all other claims that accrued prior October 26, 2008, are time barred. The statute of limitations for Section 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. *See, e.g., Wallace v. Kato,* 549 U.S. 384, 387 (2007). In New York, this time period is three years, *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004), and begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Pearl v. City of Long Beach,* 296 F .3d 76, 80 (2d Cir.2002) (internal quotation marks omitted); *see also Singleton v. City of N.Y.,* 632 F.2d 185, 192 (2d Cir.1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").

Duffy asserts that each of his six interviews before the Board were tainted by false information contained in his parole file. Yet Duffy was aware of this allegedly false information as early as 2006; indeed, in 2006 he challenged the information in a New York Article 78 proceeding. (*See* Biesty Decl. Ex. A). Even if Duffy was not aware of the full extent of the allegedly false information contained in his file, his claims accrued for statute of limitations purposes no later than 2006, and thereafter each time he was denied parole. *See Wallace,* 549 U.S. at 391 ("Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

or predictable."). For similar reasons, Plaintiff's equal protection claims related to receiving the denial of parole immediately after the 2003 hearing (Compl.¶¶ 14–15) and being handcuffed in front of the Board (*id.* ¶¶ 16, 31), are barred by the statute of limitations. As Duffy did not commence this action until October 26, 2011, and has not established any basis for equitable tolling of the statute of limitations, any claim related to the Board's actions prior to October 26, 2008, is time barred and must be dismissed in its entirety.

Duffy's claims based on the Board's failure to consider Duffy's sentencing minutes in his parole board hearings in 2001, 2003, 2005, and 2007 (*see* Compl. ¶¶ 32–34) are also time barred, as Duffy was aware of the alleged injury issue as early as 2007. *See Matter of Duffy v. N.Y.S. Div. of Parole,* 74 A.D.3d 965, 965–66 (N.Y.2d Dep't 2010) (noting that Plaintiff challenged the Board's 2007 denial of parole on grounds that the Board did not consider his sentencing minutes). Further, even if this claim were not barred by the statute of limitations, it would fail, as courts have consistently held that the Board's failure to consider a prisoner's sentencing minutes does not amount to a constitutional violation. *See, e.g., Villalobos,* 2010 WL 3528926, at *3 (stating the "Parole Board's failure, refusal, or inability to consider [a prisoner's] sentencing minutes does not violate constitutional due process rights").[FN3]

> [FN3.] Defendant argues also that Duffy's claim related to the sentencing minutes is precluded by the state court's rejection of a similar claim. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 14–15; Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss 1, 6). The Court need not reach those arguments.

**C. The Claims Related to the 2009 and 2011 Parole Determinations**

**\*6** That leaves Duffy's claims with respect to the 2009 and 2011 denials of parole. Plaintiff alleges that his constitutional rights to procedural and substantive due process, free speech, and equal protection were violated when the Board repeatedly denied his application for parole release.

**1. The Due Process Claims**

Broadly construed, Plaintiff makes two allegations regarding the violation of his due process rights at the 2009 and 2011 parole determinations: first, that his due process rights were violated because inaccurate information was contained in his parole file; and second, that the Board violated his due process rights by acting arbitrarily and capriciously in denying his parole application. The Court will address each allegation in turn.

**a. Right to Have Victim Impact Statements Expunged from File**

Insofar as Duffy alleges that his due process rights were violated by the Board's failure to expunge inaccurate information from his prison file, this claim fails. As an initial matter, it is not even clear that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file. *See, e.g., Watts v. Pataki,* NO. 9:08–CV–92, 2010 WL 2925725, at *3 (N.D.N.Y. Jul 20, 2010) (noting that the Second Circuit has not recognized the right of a prisoner to have incorrect information expunged from his prison file); *Hall v. Marshall,* 479 F.Supp.2d 304, 315 n. 4 (E.D.N.Y.2007) (same). But even if Duffy had a limited constitutional right to have incorrect information expunged from his file, his claim would fail for two reasons. First, conclusory assertions aside, Duffy fails to allege in a plausible way that the Board actually relied on the allegedly false information. (*See, e.g.,* Compl. ¶¶ 10, 24; *see also* Def.'s Mem. of Law in Supp. of Mot. to Dismiss 7–8). Second, "when the alleged false information did not originate with the defendant, but was received from a third party, the defendant is not responsible for any alleged 'constitutional injury' and the claim must be dismissed." *LaBounty v. Coombe,* No. 95 Civ. 5592(MBM), 1999 WL 177438, at *3 (S.D.N.Y. Mar. 30, 1999), *aff'd,* 208 F.3d 203, 203 (2d Cir.2000) ("Even if we were to adopt a limited right to an accurate criminal file, we refuse to extend this right to information that comes from third parties and that has not been demonstrated to be inaccurate, such as the information in this case."); *see also Pruett v. Levi,* 622 F.2d 256, 258 (6th Cir.1980).

Here, Plaintiff's complaint challenges information derived from external sources—from the victim impact statements submitted by James Connelly's sister and from statements allegedly made by public officials (unrelated to

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

the Board). (*See* Compl. ¶ 4; Pl.'s Aff. in Opp'n to Def's Mot. to Dismiss ¶ 5). Because the Board had "every right to rely on this information"—indeed, it was *required to* consider the victim impact statements, *see* N.Y EXEC. LAW § 259–i(2)(c)(A)—Defendant's refusal to expunge this information has not caused Plaintiff a "constitutional injury." LaBounty, 1999 WL 177438, at *3; *see also* Krebs v. N.Y.S Div. of Parole, No. 9:08–CV–255 (NAM/DEP), 2009 WL 2567779, at *12 (N.D.N.Y. Aug. 17, 2009) (holding that "adverse public and political pressure ... are permissible factors which parole officials may properly consider as they relate to whether release is not incompatible with the welfare of society and will not so deprecate the seriousness of the offense as to undermine respect for the law") (internal quotation marks and citation omitted). Accordingly, this claim is dismissed.[FN4]

> FN4. In his opposition to Defendant's motion to dismiss, (Docket No. 22), Duffy argues that if information in an agency's file is capable of verification, then pursuant to the Privacy Act, 5 U.S.C.A. § 552, et seq., the agency must take "reasonable steps to maintain accuracy of information ..." (Pl.'s Mem. of Law in Opp'n to Def's Mot. to Dismiss ¶ 4). The Privacy Act does not apply, however, to the conduct of state agencies. *See* Lampkin v. N.Y.C. Dep't of Probation, No. 00 Civ. 7165, 2001 WL 210362, at *2 (S.D.N .Y. Mar. 1, 2001) (dismissing a Privacy Act claim because the Privacy Act "concerns itself exclusively with the manner in which federal institutions conduct themselves and has no bearing on the instant case, which challenges the conduct of state agencies and officials"); *accord* Stoianoff v. Comm 'r of Motor Vehicles, 107 F.Supp.2d 439, 440 (S.D.N.Y.2000), *aff'd,* 12 Fed. App'x 33 (2d Cir.2001).

**b. Denial of Parole**

**\*7** Duffy also challenges the Board's denial of his parole application in 2009 and 2011. Specifically, Duffy alleges that the Board acted in an arbitrary and capricious manner in denying him parole because (1) the Board

intentionally ignored its statutory duty to take into consideration all of the statutorily mandated factors and instead relied solely on the nature of his underlying crime, thereby relying on the same factors that the sentencing court took into consideration; (2) the Board provided no explanation to support its determination that granting Duffy parole would be inappropriate and issued a decision in 2011 that was "boilerplate," crafted in "conclusionary terms" without a "meaningful statement of the reasons supporting the denial"; and (3) the Board had predetermined the outcome of his application, prior to his hearing.

In order to state a claim for violation of his due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *See, e.g.,* Tellier v. Fields, 280 F.3d 69, 79–80 (2d Cir.2000). The Supreme Court had held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). To trigger a protectable liberty interest, an inmate "must have a legitimate expectancy of release that is grounded in the state's statutory scheme," rather than a "mere possibility of release." Barna v. Travis, 239 F.3d 169, 170 (2d Cir.2001) (per curium). The Second Circuit has concluded that the New York State parole statute "is not one that creates in any prisoner a legitimate expectancy of release." Id. at 171. Therefore, because under New York's statutory scheme Plaintiff does not have a legitimate expectancy of release, Duffy does not have a liberty interest in parole that is protected by the Due Process Clause. *See id.* (citing Boothe v. Hammock, 605 F.2d 661, 664 (2d Cir.1979)); *see also* Hamilton v. N.Y.C. Mun., No. 9:11–CV–0348 (DNH/DEP), 2012 WL 398819, at *8 (N.D.N.Y. Jan 10, 2012).

Even though prisoners in New York State have no liberty interest in parole, district courts in the Second Circuit have held they do have a limited due process right not to be denied parole arbitrarily or capriciously, or on the basis of a protected classification (such as race, religion, or gender) or an irrational distinction. *See, e.g., Bod die v.* N.Y.S. Div. of Parole, 285 F.Supp.2d 421, 428 (S.D.N.Y.2003); Standley v. Dennison, No. 9:05–CV–1033 (GLS/GHL), 2007 WL 2406909, at *9

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

(N.D.N.Y. Aug. 21, 2007) (collecting cases); *Romer v. Travis,* No. 03 Civ. 1670(KMW) (AJP), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) (holding that because " '[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release ... [a prisoner] can claim a due process violation only if the Parole Board has denied his release arbitrarily or capriciously") (internal quotation marks omitted); *West v. Alexander,* No. 07–cv–2098 (ARR)(LB), 2009 WL 5172960, at *6 (E.D.N.Y. Dec. 30, 2009) (noting that "an inmate's due process rights are violated when the Parole Board denies release arbitrarily or capriciously") (internal quotation marks omitted).[FN5] "[O]nly the most egregious official conduct," however, "can be said to be 'arbitrary in the constitutional sense.' " *Graziano,* 689 F.3d at 116 (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)).

FN5. Some district courts have held that the absence of a constitutionally protected liberty interest is the end of the due process inquiry. *See, e.g., Gordon v. Alexander,* 592 F.Supp.2d 644, 653 (S.D.N.Y.2009)* ("Where no process at all is required, the government decision-maker may use absolute discretion—even the discretion to render decisions on arbitrary or irrational bases—without violating constitutional due process requirements."). The Second Circuit, however, has not adopted that view and has analyzed claims like Duffy's here using the arbitrary-and-irrational standard. *See, e.g., Graziano,* 689 F.3d at 115 (citing cases). In any event, Defendant here has waived any argument against applying that standard.

**\*8** Here, Duffy makes a number of allegations as to why the Board did not comply with its own statutory and regulatory guidelines in denying his parole application. First, Duffy alleges that the Board intentionally ignored its duty to take into consideration all of the statutorily mandated factors and instead relied solely on the nature of his underlying crime. (Compl. Claim III). This conduct, Duffy alleges, was an abuse of discretion and was "irrational, arbitrary, capricious, unlawful and violat[ed] plaintiff's constitutional rights." (*Id.*). As noted above, New York Executive Law § 259–i lists a number of

factors that the Board must consider in a parole determination. As the statute does not specify how much weight to be accorded to each factor, the "Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." *Manley v. Thomas,* 255 F.Supp.2d 263, 267 (S.D.N.Y.2003) (citing *Garcia v. N.Y.S. Div. of Parole,* 657 N.Y .S.2d 415, 418 (App. Div. 1st Dep't 1997)). Furthermore, the "law does not forbid the Board from deciding that the seriousness of an offense and a prisoner's institutional record outweigh [other criteria]." *Salahuddin v. Unger,* No. 04 CV 2180(JG), 2005 WL 2122594, at *6 (E.D.N.Y. Sept. 2, 2005); *see also Brown v. Thomas,* No. 02 Civ. 9257(GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003) (stating that "the [Parole] Board was fully entitled to determine that the nature of the crime outweighed the positive aspects of [petitioner's] record"); *Pacheco v. Pataki,* No. 9:07–CV–0850 (FJS/GHL), 2010 WL 3155810, at *3 (N.D.N.Y. May 5, 2010) ("The vast majority of the courts in the Second Circuit that have considered this issue have held that parole denials based solely on the severity of the prisoner's commitment offense are not arbitrary, capricious, or based on an irrational distinction.").

Here, the Board considered Duffy's (1) community service while incarcerated (Compl. Ex. D at 9); (2) disciplinary record (*id.* at 9–10); (3) planned post-release living arrangements (*id.* at 10); (4) letters of support (*id.* at 11–12); and (5) post-release employment opportunities (*id.* at 13), but ultimately determined that the "heinous" nature of the crime and Duffy's status as a fugitive "shows a complete lack of regard for human life." (Compl .Ex. J). Because it was within the discretion of the Board to consider these factors, Duffy has not stated a due process claim on these grounds. *See Brown v. Thomas,* No. 02 Civ. 9257(GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003) (holding that where the Board "considered the relevant statutory factors, including petitioner's record in prison and postrelease plans, before concluding in its discretion that, due to the serious and violent nature of the crime and petitioner's other violent conduct, petitioner is not an acceptable candidate for release on parole,' reliance on the nature of the inmate's crime to deny parole is entirely consistent with the criteria laid down by the legislature"); *Graziano v. Pataki,* No. 06 Civ. 0408(CLB),

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

2006 WL 2023082, at *8 (S.D.N.Y. July 17, 2006) ("[W]here a Board has properly considered statutory guidelines, it may ... deny parole where it determines upon fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors.").

**\*9** Duffy also alleges that the Board used factors to deny him parole that the sentencing court took into consideration, thereby "illegally re-sentenc [ing] plaintiff." (Compl. ¶¶ 21–22; Claim III; Compl. ¶ 29, Claim VII). Plaintiff seems to be claiming that by denying him parole based upon the "heinous" nature of his original crime, the Board violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The Second Circuit, however, has held that "[t]he Double Jeopardy Clause applies to judicial proceedings, not parole." *Priore v. Nelson,* 626 F.2d 211, 217 (2d Cir.1980); *see also Alessi v. Quinlan,* 711 F.2d 497, 501 (2d Cir.1983) ("A denial of parole is a decision to withhold early release from the confinement component of a sentence. It is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause ...."). Accordingly, Plaintiff has not sufficiently stated a claim on the grounds that the Board relied on the same factors as the sentencing court.

Duffy alleges as well that the Board acted in an arbitrary and capricious manner by providing no explanation to support its determination that granting Duffy parole would be inappropriate. He asserts that the Board's decision is not supported by any facts, does not contain a "meaningful" statement of the reasons supporting the denial, and is "boiler plate," crafted in "conclusory terms" with "pro-forma language." (Compl.¶ 28). A review of the Board's decision (*see* Compl. Ex. J), however, belies this claim. In its decision following the parole hearing, the Board advised Duffy of its reasons to deny him parole, including concerns for community safety, the heinous nature of his crime, and the fact that his release "would so deprecate the seriousness of the crime as to show disrespect for the law." (*Id.*). Such an explanation, especially coupled with the additional considerations that the Board made during the hearing (*see* Compl. Ex. D at 9–11, 13), is more than sufficient to comply with the mandates of due process. *See Gittens v.*

*Thomas,* No. 02 Civ. 9435(JSM), 2003 WL 21277151, at *2 (S.D.N.Y. May 30, 1993) ("[D]ue process does not require the courts to reexamine the factual determinations of the Board."); *Duemmel v. Fischer,* 368 Fed. App'x 180, 182 (2d Cir.2010) ( "[N]othing in the due process concepts as they have thus far evolved ... requires the Parole Board to specify the particular 'evidence' ... on which it rests the discretionary determination that an inmate is not ready for conditional release."); *Schwartz v. Dennison,* 518 F.Supp.2d 560, 573 (S.D.N.Y.2007) (holding that due process requires only that the Board state "in what respects [the prisoner] falls short of qualifying for parole, not as an evidentiary prerequisite, but rather as a guide to the inmate for his future behavior") (internal quotation marks omitted).

**\*10** Finally, Duffy alleges that the Board had predetermined the outcome of his parole hearing in 2011. Defendant does not dispute that the guarantee against arbitrary and irrational government action includes a right to a hearing before a fact-finder that has not predetermined the outcome of the hearing. *See, e.g., Withrow v.. Larkin,* 421 U.S. 35 (1975) (holding that "a fair trial in a fair tribunal is a basic requirement of due process," and this rule "applies to administrative agencies which adjudicate as well as to courts"); *Edwards v. Balisok,* 520 U.S. 641 (1997) (recognizing due process claim based on allegations that prison disciplinary hearing officer was biased and would suppress evidence of innocence); *Bakalis v. Golembeski,* 35 F.3d 318, 326 (7th Cir.1994) (holding that a decision-making body "that has prejudged the outcome cannot render a decision that comports with due process"); *cf. Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("Since the touchstone of the right of due process is freedom from arbitrary governmental action, it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right."). Thus, the sole question here is whether the complaint plausibly alleges that the Board predetermined Duffy's parole decision.

It does. That is because, as Duffy notes, a portion of the Commissioner's Worksheet that was completed by the Board during the parole hearing—most notably, the portion that begins "Parole is denied"—is typewritten and, according to the complaint, the Board did not have a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

typewriter or computer at the hearing. (Compl. ¶¶ 24–26; Compl. Ex. E). It may be that the typewritten portion is part of some pre-printed form that is not specific to Duffy, and that the Board used it only after deciding to deny parole and filled in the blank space by hand accordingly. But that is not self evident from the form itself as, among other things, the crucial portion of the form ("Parole is denied ...") appears to be in a typeface different from the portion that precedes it. (Compl.Ex.E). Thus, at this stage of the proceedings, the Court must accept as true Plaintiff's contention that the Board brought to the hearing a Worksheet reflecting a predetermined decision to deny him parole. Given that, Plaintiff's claim survives Defendant's motion to dismiss.

## 2. Retaliation

In Count IX of his complaint, Duffy alleges that in retaliation for having filed an Article 78 proceeding in state court, he was denied a fair and impartial parole hearing in 2011. To state a claim of retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009). For the adverse action prong, the plaintiff must show that the defendant's "retaliatory conduct ... would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights .... Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir.2001) (citations omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

**\*11** Duffy satisfies his burden with respect to the first prong of the First Amendment retaliation analysis—that the speech or conduct at issue was protected—because the filing of a lawsuit is a constitutionally protected activity. *See Bounds v. Smith*, 430 U .S. 817, 821–32 (1977); *accord Amaker v. Goord*, No. 98 Civ. 3634(JGK), 2002 WL 523371, at \*14 (S.D.N.Y. Mar. 29, 2002); *see also, e.g., Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996) (citing *Franco v. Kelly*, 854 F.2d 584 (2d Cir.1988)) (holding that retaliation against a prisoner for filing a grievance is a violation of that prisoner's First Amendment

right to petition the government for redress). Similarly, Plaintiff satisfies the second prong by alleging that he was denied parole in 2011 in retaliation for his state court action (*see* Compl. ¶ 24 ("It is very apparent that the Board used the fact that plaintiff is challenging the information in the statements as false, against plaintiff ....")), which sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his rights. *See Dawes*, 239 F.3d at 493.

Finally, although the question is close, Duffy's allegations—liberally construed—are sufficient to support an inference of a causal relationship between his previous challenges to the Board determinations and denial of parole. (Compl.¶¶ 23–24). To be sure, the gap in time between Duffy's state-court challenges to his earlier parole determinations and his denial of parole in 2011 cuts against his claim. *Cf., e.g., Figueroa v. Weisenfreund*, 255 Fed. App'x 595, 597 (2d Cir.2007) (holding that fifteen months between employee's complaints and employer's termination of employment did not establish causal connection in a Section 1983 retaliation claim). Yet Duffy's allegations of prior good behavior and the crossed-out section of the Board's Worksheet, which reads "you claim the victim's family is making false statements about you" (Compl.Ex.E), are sufficient to survive a motion to dismiss. The Board may well have had a valid non-retaliatory motive for denying parole; indeed, the Board noted that public safety concerns animated its decision. But the question of the Board's motivation in this case is factual and may not be decided as a matter of law at this early stage of the proceeding.

## 3. Equal Protection Claims

Duffy also alleges that his equal protection rights were violated because he was denied parole "time after time" when other, similarly situated prisoners were granted parole, due to the false information in his file and "behind the scenes political pressure," which "caused the denials of parole release to be predetermined." (Compl. Claim II).

Under the Equal Protection Clause, "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). With respect to prisoners, in order to establish an equal protection violation, the plaintiff must show that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

"the disparity in treatment cannot survive the appropriate level of scrutiny which ... means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (internal quotation marks omitted). If an individual cannot allege membership in a protected class, he can still prevail in a class of one equal protection claim by showing that he was "intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006). Such a plaintiff must establish "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]" in order to succeed on an equal protection claim. *Id.*

**\*12** Significantly, however, "[a]lthough the standard for *establishing* a 'class of one' claim is extremely high, the standard for *stating* a 'class of one' claim is not onerous." *Mathie v. Dennison,* No. 06 Civ. 3184(GEL), 2007 WL 2351072, at \*9 (S.D.N.Y. Aug. 16, 2007) (citations and internal quotation marks omitted). To state a valid class of one claim, a plaintiff must "allege (1) that [he was] intentionally treated differently ... and (2) that the disparate treatment was either (a) irrational and wholly arbitrary or (b) motivated by animus." *Assoko v. City of N.Y.,* 539 F.Supp.2d 728, 735 (S.D.N.Y.2008) (internal quotation marks and citation omitted). Such animus may include retaliatory animus. *See, e.g., Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 789 (6th Cir.2005) (noting that plaintiff's "class of one" claim could survive a motion to dismiss where it alleged that plaintiff "was similarly situated to others who received different treatment, and that his disparate treatment was motivated by invidious, retaliatory animus"). "General and relatively bare allegations that plaintiff was subjected to a different standard than that typically afforded to a similarly situated person are sufficient to meet the minimum level established for class of one claims at the pleading stage." *Mathie,* 2007 WL 2351072, at \*9 (internal quotation marks and citation omitted).

Applying those standards here, Duffy has stated a valid class of one equal protection claim. Specifically, Duffy alleges that he was similarly situated to six other individuals who were granted parole on the same day as

his 2011 hearing—all had been convicted of murder in the second degree, none had served more time than Duffy, and, according to the complaint, none had better institutional records than Duffy—and that he was denied parole in retaliation for his previous challenges to his parole denials. (Compl.¶¶ 17–18, 30). Duffy may not be able to establish his claim for purposes of summary judgment or trial, as the standard for doing so is much more difficult to meet. *See, e.g., Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005), *abrogated on other grounds by Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008) (noting that, after the pleading stage, a plaintiff must establish that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [that] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake"). But his existing allegations are sufficient at this stage. *See, e.g., Ponterio v. Kaye,* No. 06 Civ. 6289(HB), 2007 WL 141053, at \*7 (S.D.N.Y. Jan. 22, 2007) (denying a motion to dismiss a "class of one" claim in which the plaintiff alleged the government was motivated by retaliatory animus); *see also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (finding that *Twombly* does not require a "universal standard of heightened fact pleading," but only "some factual allegations" to "amplif[y]" the "plausib[ility]" of a claim), *overruled on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 662 (2009).[FN6]

> **FN6.** Insofar as Duffy claims that the alleged disparate treatment was due to "behind the scenes political pressure" (Compl. Claim II), his claim must be dismissed. As previously noted, adverse political pressure is a permissible factor for the Board to consider in a parole determination, as it relates to "whether release is not incompatible with the welfare of society and will not so deprecate the seriousness of the offense as to undermine respect for the law." *Krebs,* 2009 WL 2567779, at \*12

### CONCLUSION

**\*13** For the reasons set forth above, Defendant's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)

(Cite as: 2012 WL 4327605 (S.D.N.Y.))

motion to dismiss (Docket No. 14) is GRANTED in part and DENIED in part. The complaint plausibly alleges that the Board predetermined Duffy's parole decision, thereby violating his right to due process, and this claim survives Defendant's motion to dismiss. Further, Duffy's retaliation claim—that he was denied a fair and impartial parole hearing in retaliation for having filed an Article 78 proceeding in state court—also survives the instant motion. Finally, Duffy has sufficiently stated a "class of one" equal protection claim on the ground that he was denied parole when other similarly situated prisoners were granted parole due to the Board's retaliatory animus.

The Clerk of Court is directed to terminate the aforementioned motion and to mail a copy of this Order to the Plaintiff.

SO ORDERED.

S.D.N.Y.,2012.

Duffy v. Evans
Not Reported in F.Supp.2d, 2012 WL 4327605 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
FAHS CONSTR. GROUP, INC., Plaintiff,
v.
Michael GRAY; John Van Auken; Timothy Farrell;
John Doe No. 1; John Doe No. 2; John Doe No. 3; John
Doe No. 4; and John Doe No. 5, Defendants.
No. 3:10–CV–0129 (GTS/DEP).

July 12, 2012.
Hinman, Howard & Kattell, LLP, Adam P. Hatch, Esq., of
Counsel, Binghamton, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Adam W. Silverman, Esq., of Counsel,
Albany, NY, for Defendants.

### *MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

*1 Currently before the Court, in this civil rights
action filed by Fahs Construction Group, Inc., ("Plaintiff")
against Michael Gray, John van Auken, Timothy Farrell,
John Doe No. 1, John Doe No. 2, John Doe No. 3, John
Doe No. 4, and John Doe No. 5 ("Defendants"), in their
individual and official capacities, is Defendants' motion to
dismiss Plaintiff's first claim for relief in its Amended
Complaint for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6) and to dismiss all claims against
Defendants in their official capacities for lack of
subject-matter jurisdiction pursuant to Fed.R.Civ.P.
12(b)(1). (Dkt. No. 31.) For the reasons set forth below,
Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended
Complaint alleges that, between approximately June of
2003 and April of 2010, Defendants, in their individual
and official capacities, violated Plaintiff's following rights:
(1) its right of equal protection under the Fourteenth
Amendment by engaging in disparate, discriminatory
conduct toward Plaintiff during a highway project for
which Plaintiff was the contractor, causing Plaintiff to
suffer significant financial loss; and (2) its right to free
speech under the First and Fourteenth Amendments by
engaging in the discriminatory conduct against Plaintiff in
unlawful retaliation for a previous dispute with an
employee from the New York State Department of
Transportation ("NYSDOT"). (See generally Dkt. No. 29
[Plf.'s Amend. Compl.].) Familiarity with the factual
allegations supporting these claims in Plaintiff's Amended
Complaint is assumed in this Memorandum–Decision and
Order, which is intended primarily for the review of the
parties. (Id.)

### B. Defendants' Motion

Generally, in support of their motion to dismiss,
Defendants argue as follows: (1) Plaintiff's first claim for
relief for violation of Plaintiff's rights of equal protection
fails to state a claim upon which relief can be granted
because it fails allege facts plausibly suggesting the
occurrence of any conduct within the applicable three-year
limitations period; and (2) based on Plaintiff's own factual
allegations, Defendants are protected from liability in their
official capacities as a matter of law by the doctrine of
sovereign immunity. (See generally Dkt. No. 31 Attach. 1
[Defs.' Memo. of Law].) Defendants do not argue, nor
does their motion request, that Plaintiff's claims be
dismissed against them in their individual capacities. (Id.)

Generally, in its response to Defendants' motion to
dismiss the first claim for relief, Plaintiff makes three
alternative arguments. First, Plaintiff argues that,
subsequent to Defendant's motion being filed, Plaintiff
received from the NYSDOT, by means of a New York
Freedom of Information Law ("FOIL") request,
documentation that supports its assertion that NYDOT
treated another, similarly situated contractor more
favorably. (Dkt. No. 33 [Plf.'s Opp'n Memo. of Law].)
Plaintiff argues that this document supports its equal

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

protection claim by showing disparate treatment within the three-year limitations period. (*Id.*) Plaintiff requests that the Court take judicial notice of this document and thus deny Defendants' motion, because Plaintiff will have met its burden under Fed.R.Civ.P. 8(a) by plausibly suggesting a timely claim. (*Id.*) In the alternative, Plaintiff argues that the Court should *sua sponte* convert the motion to dismiss into a motion for summary judgment pursuant to Fed.R.Civ.P. 12(d). (*Id.*) Plaintiff argues that the document received from the FOIL request demonstrates a genuine issue of material fact, which would prevent the granting of a motion for summary judgment. (*Id.*) Finally, Plaintiff alternatively argues that, if the Court decides to grant the motion to dismiss, the Court should do so without prejudice and give Plaintiff another opportunity to amend the Complaint to reflect this information newly obtained from the FOIL request. (*Id.*) Plaintiff does not oppose Defendants' motion to dismiss Plaintiff's claims against them in their official capacities because of sovereign immunity. (*Id.*)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State Claim

**\*2** Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing dismissals for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.,* 05–CV–1458, 2009 WL 3629674, at \*3–5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard.

The Court would add only a few words regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c) is contemplated, the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided

by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[FN1]

> FN1. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (explaining that a district court considering a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citations omitted).

**B. Legal Standard Governing Motions to Dismiss for Lack of Subject–Matter Jurisdiction**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000). When resolving a motion to dismiss for lack of subject-matter jurisdiction, a district court may look to evidence outside of the pleadings. *Makarova,* 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 [2d Cir.1996] ). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (citing *Makarova,* 201 F.3d at 113).

**C. Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Memorandum–Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 31, Attach. 1 [Defs.' Memo. of Law]; Dkt. No. 33 [Plf.'s Opp'n Memo. of Law].)

**III. ANALYSIS**

**A. Whether Plaintiff's First Claim for Relief Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted**

**\*3** As stated in Part I.B. of this Memorandum–Decision and Order, Defendant seeks dismissal of Plaintiff's first claim for relief because Plaintiff failed to allege facts plausibly suggesting the occurrence of any conduct within the applicable three-year limitations period and thus failed to state a claim upon which relief can be granted. After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 31, Attach.1) The Court would add only the following analysis.

In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that pleading standard under Fed.R.Civ.P. 8(a) turns on the *plausibility* of an actionable claim, rather than turn on the *conceivability* of an actionable claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556–70 (2007). As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 129, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Here, Plaintiff's first claim for relief in the Amended Complaint does not allege facts plausibly suggesting any disparate treatment by Defendants within the applicable statute of limitations period, but instead alleges that Plaintiff could show disparate treatment only after discovery. (Dkt. No. 29, at ¶ 94.) As the Supreme Court noted in the analogous situation in *Twombly,* Plaintiff must allege facts plausibly suggesting a plausible claim in order to proceed to discovery and cannot rest its Amended Complaint on the mere hope that the discovery process will provide necessary facts to support its claim. *See Twombly,* 550 U.S. at 559. As a result, an analysis of the material within the four corners of Plaintiff's Amended Complaint requires the conclusion that the Amended Complaint fails to state a plausible claim upon which relief can be granted as to the first claim for relief under Fed R.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

Civ. P. 8(a)(2).

In its response, however, Plaintiff has attached as Exhibit A the documentation it received from its FOIL request from NYSDOT, which purports to show disparate treatment of another, similarly positioned company beyond the statute of limitations period. (Dkt. No. 33, Attach.1.) Plaintiff requests that the Court take judicial notice of this documentation pursuant to Fed.R.Evid. 201(b) and (c), when ruling on this motion. (Dkt. No. 33 [Plf.'s Opp'n Memo. of Law].) Rule 201(b) states that a court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Because NYSDOT's payment of a particular contractor is not generally known within the Northern District of New York, the Court could take judicial notice of the documentation only under Fed.R.Evid. 201(b)(2).

**\*4** As the Advisory Committee Notes to Fed.R.Evid. 201 explain, "the tradition [with respect to judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed.R.Evid. 201(b), Advisory Committee's Notes. More specifically, a "high degree of indisputability is the essential prerequisite" to taking judicial notice of an adjudicative fact. Fed.R.Evid. 201(a), Advisory Committee's Notes. As a result, courts often take judicial notice of records prepared for widespread and open public release.[FN2] However, the document in question is of a distinctly different character. It was not prepared for review for the general public and could be obtained only by a time-consuming response to a FOIL request. See In re Take Two Interactive Sec. Litig., 551 F.Supp.2d 247, 263 n. 4 (S.D.N.Y.2008) (declining to take judicial notice of unauthenticated, unpublished documents). The only interpretation of the documentation is provided by Plaintiff's affidavit, which may or may not be accurate. (Dkt. No. 33, Attach.1.) Furthermore, because Plaintiff does not provide the Court with its original FOIL request, the Court is unable to determine, from the documents provided, what exact information Plaintiff requested from NYSDOT. Simply stated, because Exhibit A does not have a high degree of indisputability that is beyond reasonable controversy, the Court may not, and

does not, consider it when deciding Defendants' motion to dismiss for failure to state a claim.

> FN2. *See, e.g. Island Software and Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir.2005) (affirming judicial notice of copyright registrations); *Driebel v. City of Milwaukee,* 298 F.3d 622, 630 n. 2 (2d Cir.2002) (affirming judicial notice of duly promulgated and published rules and regulations); *In re Rogers,* 07–31186, 2008 WL 1902050, at *1 (Bkrtcy. E.D. Tenn. April 25, 2008) (taking judicial notice of advisory opinions issued by the Tennessee Attorney General).

In the alternative, Plaintiff requests that the Court (1) rely on the document in question to *sua sponte* convert Defendants' motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 12(d), and (2) conclude that, based on that document, Plaintiff has raised a genuine issue of material fact that precludes the Court from granting summary judgment. (*Id.*)

With all due respect, the Court finds this argument to misconstrue Fed.R.Civ.P. 12(d) and Fed.R.Civ.P. 56. It is true that, pursuant to Fed.R.Civ.P. 12(d), a court must convert a defendant's motion to dismiss for failure to state a claim into a motion, made by defendant, for summary judgment if (1) matters outside the pleadings are presented to the court, and (2) the court decides not to exclude those matters. Fed.R.Civ.P. 12(d). It is also true that, pursuant to Fed.R.Civ.P. 56, the court can then, *inter alia,* deny the defendant's motion, thus enabling the plaintiff to reach a jury on its claims.[FN3]

> FN3. Indeed, the court can also, inter alia, actually grant summary judgment in the plaintiff's favor (if the issue has been sufficiently noticed and briefed). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.") [citations omitted].

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

However, to do so, the following two preconditions must be met: (1) the Court must decide not to exclude the matters outside the pleadings; and (2) Defendants must be given notice of the conversion and a reasonable opportunity to present all the material that is pertinent to the conversion. Fed.R.Civ.P. 12(d); *see, e.g., B.V. Optische Industrie De Oude Delft v. Hologic,* 909 F.Supp. 162, 167 (S.D.N.Y.1995) ("Because in this case it was the non-movant who offered the supplemental submissions, the movants could not have had adequate notice that this motion might be treated as one for summary judgment. Therefore, conversion is inappropriate ."). In this case, neither of these preconditions has been met. For these two reasons alone, the Court rejects Plaintiff's argument.

**\*5** In any event, even if the above-described two preconditions were met, the matters outside the pleadings could be considered only to the extent that they support (or attack) the *evidentiary* sufficiency of a claim; [FN4] they could not be considered also in an effort to support (or attack) the *pleading* sufficiency of that claim.[FN5] This is because, att all times during the consideration of extra-pleading material on a motion for summary judgment, the claim at issue must be well-pled (without resort to the extra-pleading material): this is why, on a defendant's motion for summary judgment, the claim at issue may be dismissed for failure to state a claim.[FN6] Frankly stated, in the Court's view, the argument that a plaintiff can use a document to create a genuine issue of fact (pursuant to Fed.R.Civ.P. 56) with regard to a claim that is not even actionable (pursuant to Fed.R.Civ.P. 12[b][6] ) when construed without that document is a bootstrap leap into a world ungoverned by the Federal Rules of Civil Procedure.[FN7] As a result, the Court could, and would, in deciding a converted motion for summary judgment in this case, focus on the glaring pleading issues presented before proceeding to any evidentiary issues presented. For this alternative reason, the Court rejects Plaintiff's argument.

FN4. 5C Wright & Miller, *Federal Practice & Proc.* § 1366 ("The element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by *extra-pleading* material.") [emphasis added].

FN5. *See* Fed.R.Civ.P. 12(d) (requiring that, if

matters outside the pleadings are considered by the court, the motion ceases to be one that addresses the pleading sufficiency of the claim and becomes one that addresses the evidentiary sufficiency of the claim).

FN6. *See Schwartz v. Compagnise General Transatlantique,* 405 F.2d 270, 273–74 (2d Cir.1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."); *Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N .Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

FN7. Viewed from another perspective, a claim is ready for summary judgment only after adequate discovery has been conducted on that claim. Fed.R.Civ.P. 56(d)(2). The scope of permissible discovery of a civil claim in federal court is defined, in large part, by what matter is relevant to that claim. Fed.R.Civ.P. 26(b)(1). Given these facts, the Court has difficulty imagining how relevant discovery could be adequately conducted on a claim if the contours of that claim have not even been sufficiently delineated for purposes of Fed.R.Civ.P. 8(a)(2) and/or Fed.R.Civ.P. 12(b)(6).

Finally, Plaintiff requests that, if the Court grants Defendants' motion to dismiss Plaintiff's first claim of relief, that dismissal should be without prejudice and with leave to replead. (Dkt. No. 33 .) The Court construes this argument under the standard that governs a cross-motion for leave to file an amended complaint, given that Plaintiff's desired result is leave to file a Second Amended Complaint.

Motions for leave to amend a complaint are governed by Fed.R.Civ.P. 15, which states that leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). Nevertheless, leave to amend a complaint is not

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

automatic; and a court may deny a motion for leave to amend where there is an apparent or declared reason not to grant leave to amend, "such as [1] undue delay, bad faith or dilatory motive on the part of the movant, [2] repeated failure to cure deficiencies by amendments previously allowed, [3] undue prejudice to the opposing party by virtue of the allowance of the amendment, [4] futility of amendment, etc." *Foman,* 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous., 608 F.2d 28, 42 (2d Cir.1979).*

With regard to the second factor described above (i.e., repeated failure to cure deficiencies by amendments previously allowed), the Court notes that granting a plaintiff an opportunity to amend before dismissal of his action is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008)* (Kahn, J., adopting on *de novo* review, Report–Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd,* 357 F. App'x 388 (2d Cir.2009); *accord, Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. March 23, 2009)* (McAvoy, J., adopting Report–Recommendation by Lowe, M.J.), *Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. March 9, 2009)* (Hurd, J., adopting Report–Recommendation by Lowe, M.J.).[FN8]

FN8. *See also Foman v. Davis,* 371 U.S. 178, 182 (1962)* (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC,* 375 F. App'x 136, 137 (2d Cir.2010)* ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Dyson v. N.Y. Health Care, Inc.,* 353 F. App'x 502, 503–03 (2d Cir.2009)* ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended

complaint with prejudice.... [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988)* ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible."); *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972)* (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002)* ("Yang's amended complaint fails to remedy this defect in his pleadings.... His equal protection claim is dismissed."), *aff'd,* 71 F. App'x 90 (2d Cir.2003); *Payne v. Malemathew,* 09–CV–1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011)* ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects. Accordingly, nothwithstanding Plaintiff's pro se status, leave to amend yet again is denied."); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998)* ("While that failure to plead special damages with respect to the other alleged representations in theory might be cured by amendment, plaintiff already has amended once and has not sought leave to amend again. Accordingly, the fraud claims will be dismissed except to the limited extend indicated.").

**\*6** Finally, in this District, a motion for leave to amend a pleading must (1) attach an unsigned copy of the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

proposed amended pleading, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means. N.D.N.Y. L.R. 7.1(a)(4).

Here, Plaintiff's cross-motion fails to (1) attach a copy of the proposed Second Amended Complaint, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the Amended Complaint or other equivalent means, in violation of Local Rule 7.1(a)(4). For this reason alone, the Court can, and does, deny Plaintiff's cross-motion.

In the alternative, the Court denies Plaintiff's cross-motion because, under the circumstances, the following relevant factors weigh decidedly against granting that cross-motion: (1) Plaintiff already had a full and fair opportunity to correct the pleading deficiencies in question, through its receipt of the Court's detailed Memorandum–Decision and Order of January 27, 2011, and its ability to file an Amended Complaint on March 13, 2011; (2) Defendants would be unduly prejudiced as a result of (a) the fact that they have already spent the time and incurred the expense of filing two separate motions to dismiss, and (b) the fact that a significant amount of time has elapsed since the events giving rise to Plaintiff's proposed claims (some of which occurred more than eight years ago) and the filing of his motion; [FN9] and (3) Plaintiff's proposed claims appear to be futile because they rely on document of questionable meaning.

> FN9. *Cf. Barber v. U.S.,* 11–CV–1100, 2012 WL 1681978, at *1 (N.D . N.Y. May 14, 2012) (Suddaby, J.) ("[T]he prejudice posed to Defendant by Plaintiff's failure to prosecute is exacerbated somewhat by the age of the case (which arises from events allegedly occurring as far back as 2009) and the number of events giving rise to the case. Under the circumstances, a further delay may well affect the memories of the numerous parties (and presumably witnesses) in the case, the ability to locate witnesses, and the preservation of evidence (particularly documentary evidence regarding the housing sale

in question).");  *Geordiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

For each of these alternative reasons, Plaintiff's cross-motion for leave to file a Second Amended Complaint is denied, and the first claim for relief contained in his Amended Complaint is dismissed with prejudice.

**B. Whether Plaintiff's Claims Against Defendants in Their Official Capacities Should be Dismissed Because of Defendants' Sovereign Immunity Under the Eleventh Amendment**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 31, Attach. 1 [Defs.' Memo. of Law].) As stated above in Part I.B. of this Memorandum–Decision and Order, Plaintiff does not oppose dismissal against Defendants in their official capacities. (Dkt. No. 33 [Plf.'s Memo. of Law].)

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.[FN10] As a result, Defendants must show only that this argument possesses facial merit in order for that argument to succeed. The Court finds that Defendants have met this modest burden. Indeed, Defendants' argument would survive even the more rigorous scrutiny appropriate for a contested argument.

> FN10. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at *1 n. 1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316

(Cite as: 2012 WL 2873532 (N.D.N.Y.))

(collecting cases); *Este–Green v. Astrue, 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug. 7, 2009)* (Suddaby, J.) (collecting cases).

**\*7** For these reasons, Plaintiff's claims against Defendants in their official capacities are dismissed. Plaintiff's claims against Defendants in their individual capacities survive Defendant's motion to dismiss.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 31) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's first claim for relief in its Amended Complaint (Dkt. No. 29) is ***DISMISSED*** with prejudice; and it is further

**ORDERED** that Plaintiff's claims against all Defendants in their official capacities are ***DISMISSED*** with prejudice; and it is further

**ORDERED** that this case is referred back to Magistrate Judge Peebles to set new pretrial deadlines.

N.D.N.Y.,2012.

Fahs Const. Group, Inc. v. Gray
Not Reported in F.Supp.2d, 2012 WL 2873532 (N.D.N.Y.), 88 Fed. R. Evid. Serv. 1316
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.